## Case No. 9,704.

### The MONADNOCK.

[5 Ben, 357; [1] 5 Am. Law T. Rep. 89; 15 Int. Rev. Rec. 33.]

District Court, E. D. New York. Nov., 1871.

SEAMAN'S WAGES—LIEN ON FREIGHT—ADVANCES BY MASTER—SEIZURE OF CARGO—PRACTICE—BILL OF LADING—ACT OF JULY 20, 1846.

1. Where cargo is arrested in admiralty in respect of the freight due for its transportation, the ordinary course is for the owner of the cargo to pay into the registry of the court any freight, acknowledged to be due, and thus obtain a release of his property from the custody of the marshal, and a discharge of his liability for the freight.

2. Freighters cannot be compelled to give bail for the value of cargo so arrested, and have no right, under ordinary circumstances, to give bail for freight which they acknowledge to be due.

3. Parties, claiming an interest in freight money, so paid into the registry, should file their claim and set up their rights by answer.

4. A canal-boat, being at Buffalo, her master and owner, A., employed a commission merchant, B., to find a freight for her, and B. made a contract with the firm of S. & B. for the transportation to New York, on the boat, of a cargo of lumber, which they had sold to S. & S. Thereupon B. signed a bill of lading, as master of the boat, for the cargo, which bill provided that the freight, when earned, was to be paid to J. & Co. in New York. The next day A., as master, signed another bill of lading, describing B. as agent of the shippers, and containing a memorandum signed by B. that $656 47 had been advanced to the captain, and directing J. & Co. to pay to the captain the balance of freight, and hold the advance subject to B.'s draft. The $656 47 had been advanced to A. by B. as a commission merchant, including his commissions, and for his security the freight was made payable to J. & Co. A. also drew a draft on J. & Co. for $25, which was also paid on the same security. The canal-boat having performed the voyage, a libel for wages was filed, on behalf of the crew of the canal-boat, against the freight money, and the cargo was arrested. S. & S., J. & Co., and B. claimed the cargo, and bonded it on the usual stipulation for value, and filed a joint answer, averring that S. & S. owned the cargo, and J. & Co. and B. the freight money, by reason of the advances made by them, and that any lien for the libellants' wages could only be enforced against the amount due to A. after

deducting the advances. A. also filed a petition, as co-libellant, to recover advances made by him for navigating the boat. *Held*, that although the proper course of practice had not been pursued in the case, yet as no objection had been taken, the court would dispose of the questions raised, except that of jurisdiction, which would be held for further argument.

5. The bill of lading signed by B. must be held to be the contract under which the cargo was carried, and the lien of the crew on the freight money for their wages would not be affected by the assumption by B. of the character of master, with the assent of A.

6. The advance by B. to A. was not an advance payment of freight, nor was the advance by J. & Co. to him.

7. The pledge of the freight to J. & Co. by A. could not displace the lien with which the law charges freight money for the wages of the crew.

8. The act of congress of July 20, 1846 (9 Stat. 38), did not exempt freight money of a canal-boat from being arrested in a suit for wages.

9. A. could not claim a priority to J. & Co. either for his wages or for advances made by him.

[This was a libel for seaman's wages by Donald McDonald against the freight money of the canal-boat Monadnock.]

A. Nash, for libellants.

C. Van Santvooid, for respondents.

BENEDICT, District Judge. The question of jurisdiction which this case presents will be reserved, to be decided when the same shall have been fully argued by counsel, with reference to the effect of the recent decisions of the supreme court, and the other questions of the case will be now disposed of, upon the assumption that the case is within the jurisdiction of the admiralty. Before considering those questions, I notice a peculiarity in the mode of procedure adopted. The action is brought to enforce a lien for wages upon the freight money due the boat "Monadnock" for the transportation of a cargo of lumber. Upon the filing of the libel, process was issued requiring the marshal to arrest the lumber described in the libel. The lumber was accordingly seized, and was subsequently discharged from custody upon the usual stipulation for value given by the claimants.

The claim filed was a joint claim, made by the firm of Steinway & Sons, the firm of Geo. Jennison & Co., and B. F. Bruce; and these claimants filed a joint answer, which sets forth that Steinway & Sons are the owners and consignees of the lumber, and that it is subject to the payment of freight, according to a bill of lading annexed; that B. F. Bruce and Geo. Jennison & Co. are the owners of the freight money, by reason of advances made by them on, and in payment of, said freight, in advance, at Buffalo and in transit, which advances, and the mode of making the same, are particularly described. The answer then denies any knowledge respecting the earning of the wages set forth in the libel, and avers that, if the court has jurisdiction to enforce the claims of the libellants

---

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]

against the freight, it can rightfully do so only to the amount which shall appear to be due the master or owner of the boat, after deducting the advances referred to.

The master and owner of the boat do not interpose any defence, and have made no claim to the freight money, and the case has been heard without objection upon the pleadings above mentioned. Upon this method of procedure, I remark, that when cargo is arrested in respect to the freight due for its transportation, the ordinary course is for the owner of the cargo to pay into the registry any freight acknowledged to be due, and thus obtain a release of his property from the custody of the marshal, and a discharge of his liability for the freight so paid. Freighters cannot be compelled to give bail for the value of a cargo seized only in respect to freight, nor forced to incur a liability for the cost of defending a suit in which they have no interest; and they have no right, under ordinary circumstances, to give bail for freight which they acknowledge to be due. Coote, Adm. pp. 14, 24; The Lady Durham, 3 Hagg. Adm. 200; The Riby Grove, 2 W. Rob. Adm. 59; The Victor, 1 Lush. 72.

The proper course here would have been for Steinway & Sons to have paid into the registry the freight which they admit they owe upon this cargo, and thus retire from the controversy; or if they desire first to dispute the jurisdiction of the court, they could do so by special plea to the jurisdiction, and apply for leave to receive the cargo upon a stipulation to hold the freight, subject to the decision of the court upon such plea.

As to the other claimants, upon the payment of the freight into the registry, they should have filed their respective claims, showing their interest therein, and set up their rights by answer. I am aware that there are cases in the books which allude to a different procedure from the one indicated, but I have thought proper to state what I conceive to be the better practice. I am not called on to interfere with the mode of procedure which has been adopted, because no objection has been taken to it; and the case has been tried upon pleadings, which both sides have treated as properly raising the points which have been discussed by the advocates.

Upon the evidence introduced as bearing upon the issues, no question has been made as to the services set forth in the libel. They are proved to have been rendered, as alleged. Nor has it been contended that a lien for such services does not attach to any freight, earned by means of those services, which remains due and payable to the master. But it is contended that certain payments of money, proved to have been made to the master and owner, were in legal effect payments of freight in advance, and that the balance only can be held subject to a lien for the wages in question. The circumstances attending the payments are as follows:

The boat being at Buffalo, and desiring a cargo, B. F. Bruce, who was a commission merchant, was employed by the master and owner to find a freight for her. Bruce, acting as agent for the boat, negotiated a contract with the firm of Scater & Belton, for the transportation to New York of a cargo of lumber, which they had sold to Steinway & Sons, deliverable in New York. That contract was set out in a bill of lading, which bears date August 9th, and which provides that the freight, when earned, is to be paid by Steinway & Sons to George Jennison & Co., in New York. The bill of lading untruly described Bruce as the master of the boat, and was signed by Bruce in that capacity, instead of by the real master, whose name was Arthur, under the supposition, doubtless, that the shippers thus obtained the additional guaranty of Bruce for the due transportation and delivery of the cargo. Such a misstatement of fact, in a bill of lading, is said to be usual in this trade. If so, it is not to be approved, and if effectual for any purpose, does not touch the rights of the libellants here. The assumption by the broker of the character of master, with the knowledge and assent of the master and owner of the boat, did not change the liability of the boat for the transportation of the cargo, or the liability of Steinway & Sons to the boat for the freight, as provided in the bill of lading, of August 9th, or affect the lien of the libellants upon that freight. This bill of lading, I incline to consider as the contract under which this cargo was transported, and according to which alone the freight proceeded against is payable.

But the answer sets up, and the evidence shows that there was another bill of lading, dated the day after the one already referred to, which is similar to the first one, except that it describes B. F. Bruce as the agent of the shippers, and makes no allusion to Scater & Belton, the real shippers, and it is signed by Arthur, the master of the boat. This bill of lading also contains the following memorandum: "Advance to captain, $656 47. On delivery, Geo. Jennison & Co. will pay captain balance of freight, holding my advance subject to my draft. B. F. Bruce." If this bill of lading can be considered as the contract under which the freight in question was earned by the boat, still it can have no effect as against the crew to make Bruce the shipper, or to give to the advances made by him the legal character of advances of freight, for the fact remains clearly proven by the evidence, that Bruce was not the freighter or the agent of the freighters, and made no advances of his money on the security of the freight to be earned. According to the evidence, Bruce, as a commission merchant, and not otherwise, advanced $656 47, including his commissions, and for his security the whole freight money was made payable to his correspondent, Geo. Jennison & Co., in New York, on whom he drew for that amount, and by whom not only

his draft, but the subsequent draft of the master for $25, was paid upon the security of .the provision, which was in both bills of lading, that the freight was to be collected by them alone. Jennison & Co. have no more advanced freight than Bruce, for they have never owed the freight, but expect to collect it of Steinway & Sons, the freighters, under the authority given by the bill of lading, and when collected to repay their advances out of it, and account to the master for the balance.

Under this view of the case, it is obvious that the question here is simply one of priority between Geo. Jennison & Co., and the crew; and the answer is clear. The pledge of the freight to Geo. Jennison & Co. may be entirely valid, so far as it was possible for the master and owner of the boat to pledge the freight; but the law charges freight money with a lien for the wages of the crew, which the master or owner cannot displace by any pledge made to secure advances to him. Freight, from the inception of the voyage, is charged with a hypothecatory interest in favor of the crew for their wages, and all assignments by the master or owners are subject thereto.

I should here remark, that I do not intend to say whether or not, in a navigation so peculiar as this, there may not be expenses, such as canal tolls for instance, which, from their nature, and the circumstances of the case, should be held to be a charge upon the freight in preference to the wages of the crew. If navigation of this description is to come within the jurisdiction of the admiralty, the principles of the law administered by courts of admiralty, will be found to be sufficient to protect that navigation, and enable it to be conducted as its exigencies and the interest of commerce shall require. Here no difficulty arises from the fact, that part of the sums advanced was applied to pay expenses peculiar to this navigation, inasmuch as the freight is sufficient to pay the wages of the crew after deducting those expenses.

The proposition of the answer therefore, that the demands of the libellants can be enforced only to the extent of the balance of freight, after deducting the amount of the advances made in Buffalo, is held untenable; and the libellants if they are entitled to maintain the action at all in this court, must be held entitled to be paid out of the freight, in preference to the claimants.

A second ground of defence, urged in behalf of the claimants, is that this freight is not liable to be proceeded against for wages, because exempted by the act of congress, of July 20th, 1846 (9 Stat. 38). The statute referred to is not set up in the answer as a bar to the action, nor alluded to therein; but its construction and effect having been argued by the advocates, I treat it as having been pleaded. This statute, if it could be construed so as to exempt canal-boats from seizure while being navigated, either during a voyage or during the season of navigation on the canals, would have no other than a beneficial effect. But treated as affording unlimited exemption to the boats described, its effect would be to cast adrift in the port of New York, at the close of navigation in each year, a very considerable number of needy men, defrauded of their wages for a longer or shorter period, by the irresponsible masters, who leave their boats here for the winter, and depart for their homes without paying the crew. The men thus oppressed, are of a class as much in need of the protection of a court of admiralty, as those seamen who follow the high seas; and I doubt not, that if the act could be so construed as to afford opportunity to apply the rules of the maritime law, in respect to the liens for wages, to boats of this class, much injustice would be prevented, and that an improvement in the character and responsibility of those who command these boats would follow, to the advantage of commerce and the state. I do not intend however to intimate at this time any opinion, as to the effect to be given to the statute in question, upon proceedings against the boats themselves, inasmuch as the present case relates solely to freight. If the act does not cover the freight, it is not material to this controversy, except in so far as it admits that navigation of this character is within the jurisdiction of the admiralty. In my opinion, the act in question does not include the freight within its exemption. The provision at the close of the first section, which is relied on, is of a character to warrant a court of admiralty, in refusing to extend it beyond the import of the words used; and there is no word in the act which covers freight money.

It is contended, that freight is appurtenant to the vessel, and therefore necessarily included with the vessel. But although freight money has been said to be appurtenant to the vessel, it is not an appurtenance in such sense that it always follows the condition of the vessel, or is always included when the vessel is named. Freight money is often proceeded against, when the vessel is not touched. It may be proceeded against when the vessel is lost. It is in some cases, as in that of masters' wages, subject to liens from which the vessel is exempt. It is the well known and natural fund for the payment of wages, and should not be held to be exempted from the charge by any other than an express provision of law. To limit the effect of the statute to the boats described in it, does not interfere with the accomplishment of the object of the provision in question, which relates to the remedy, and was intended to prevent the use of the summary process of the admiralty to stop, in the canal, boats there being drawn by horses. At least it is confined by its terms to boats so navigated, and the difficulties of navigation resulting from seizures of that class of boats would

seem to be the evil, which the provisions in the statute sought to obviate.

My conclusion, therefore, upon this branch of the case is, that the act of July, 1846, has no effect to exempt the freight in question from being proceeded against, in this action for the wages of the crew. There is besides the claim of the crew for their wages, a claim of the master, who has filed his petition to be made co-libellant, and who seeks to enforce a lien against this freight, for a balance due him for advances made by him towards navigating the boat. In regard to this claim, it is sufficient to say, that the master, by the memorandum upon the bill of lading signed by him, acknowledged the receipt of $656 47, upon security of the freight; and both bills of lading made the freight payable to Jennison & Co. to render the security effectual, with authority to them to deduct the advances made. He also afterwards drew from Jennison & Co. $25, on the same security. As against a claim, secured to be paid out of this fund, by the assignment of the master himself, the master can make no claim to preference, either for wages due him, or advances made by him.

The demand of the master will therefore be disallowed. Having thus disposed of all the defences, except that based on the want of jurisdiction, I direct that the cause be reargued upon that point.